**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No.  10–cv–00081–REB–MJW

DAVID WAYNE HEIDTKE,

      Plaintiff,

v.

CORRECTIONS CORPORATION OF AMERICA,
JERE G. SUTTON, M.D., in his Individual and Official Capacity,
K. CARPENTER, R.N., in her Individual and Official Capacity,
ANNA JOLLY, R.N., in her Individual and Official Capacity,

      Defendants.

---

## ORDER RE: MOTION FOR SUMMARY JUDGMENT

---

**Blackburn, J.**

The matters before me are (1) **Motion for Summary Judgment from the CCA**

**Defendants** [#80][1] filed February 7, 2011; and (2) defendant Jere G. Sutton, M.D.'s

**Motion for Partial Summary Judgment Pursuant to Fed.R.Civ.P. 56(a)** [#81] filed

February 7, 2011.  I grant the motions insofar as they seek summary judgment as to

plaintiff's Eighth Amendment claim for deliberate indifference and decline to exercise

supplemental jurisdiction over the supplemental state law negligence claims.

### I.  JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 (federal

question) and 1367 (supplemental jurisdiction).

---

[1]  "[#80]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

## II.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material

fact and the movant is entitled to judgment as a matter of law.  **FED.R.CIV.P.** 56(c);

**Celotex Corp. v. Catrett**, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265

(1986).  A dispute is "genuine" if the issue could be resolved in favor of either party.

**Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586,

106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); **Farthing v. City of Shawnee**, 39 F.3d

1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome

of the case.  **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248, 106 S.Ct. 2505,

2510, 91 L.Ed.2d 202 (1986); **Farthing**, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of

a genuine fact issue.  **Concrete Works, Inc. v. City & County of Denver**, 36 F.3d

1513, 1517 (10th Cir. 1994), **cert. denied**, 115 S.Ct. 1315 (1995).  Once the motion has

been properly supported, the burden shifts to the nonmovant to show, by tendering

depositions, affidavits, and other competent evidence, that summary judgment is not

proper.  **Id.** at 1518.  All the evidence must be viewed in the light most favorable to the

party opposing the motion.  **Simms v. Oklahoma ex rel. Department of Mental Health**

**and Substance Abuse Services**, 165 F.3d 1321, 1326 (10th Cir.), **cert. denied**, 120

S.Ct. 53 (1999).

## III.  ANALYSIS

Plaintiff, a former inmate at the Heurfano County Correctional Center ("HCCC") in

Walsenburg, Colorado, broke his right distal radius during a softball game on June 2,

2008.[2]  He was taken to the local emergency room, where the arm was x-rayed and

then splinted and placed in a sling.  His discharge instructions noted that "[t]he fracture

is not serious, however, and should heal well with adequate protection.  Your

physician's evaluation shows the bone is in good position to heal."  (CCA Motion App.,

Exh. A-7 at HEIDTKE 000013.)

On June 4, defendant, Dr. Jere Sutton, saw plaintiff at HCCC for a follow-up

examination.  Dr. Sutton had been hired as an independent contractor by defendant,

Corrections Corporation of America ("CCA"), a private entity that operates the prison, to

temporarily fill in as the facility's medical doctor while a permanent replacement for the

previous physician was sought.  Noting that plaintiff had been "[d]iagnosed with a stable

fracture" at the hospital,[3]  Dr. Sutton's examination revealed "swelling of the hand and

pain on palpation and movement."  Plaintiff was given prescriptions for Vicodin and

Tylenol, and Dr. Sutton's notes stated that he should be followed up in five days "for

possible casting" after the swelling had subsided.  (*Id.*, Exh. A-8 at SUTTON 000255.)

Although Dr. Sutton did not personally evaluate plaintiff again until June 17,

plaintiff returned to the clinic three times in the interim.  On June 6, while at the clinic to

pick up medication, plaintiff was noted to be out of his sling with his arm dangling

unsupported.  Staff "advised [that] he needed to be wearing the sling that was provided

for him to reduce the discomfort, swelling, & tingling."  (*Id.*, Exh. A-12 at SUTTON

---

[2]  Plaintiff had injured the same wrist previously on May 20, 2008, again while playing softball. He was taken to the emergency room at that time, and x-rays were recommended to assess whether there was a fracture, but plaintiff refused x-rays at that time.

[3]  The evidence of record does not reveal that the x-rays taken at the hospital were ever forwarded to HCCC for independent evaluation by physicians there, and I, therefore, may not conclude that they were.

000334.)  The following day, plaintiff was seen again while waiting to receive his

medications.  Plaintiff again complained of swelling in his hand and fingers, but was

reminded that he needed to use his sling, as he had again been seen without it, or any

other support for his injured arm, twice that day.  (*Id.*)  On June 10, plaintiff returned

again with complaints of swelling in his fingers.  Again, he was not wearing his sling, but

stated that "it was too much trouble" to do so when he went to meals.  He was given a

pass for the sling to that end.  (*Id.*, Exh. A-12 at SUTTON 000335.)

On June 17, plaintiff saw Dr. Sutton again, and x-rays were ordered and taken

that same day.  Dr. Sutton, an orthopedist by education and training (although operating

as a general practitioner in the context of his position at HCCC), noted that the fracture

"[a]ppears stable and slightly impacted with no angulation."  Although plaintiff was

experiencing continued swelling and pain severe enough to prevent him from sleeping,

Dr. Sutton noted that, although plaintiff was then wearing his splint and sling, he

previously had been "out of his sling at times."  Moreover, Dr. Sutton was "[u]nable to

cast at this time due to the swelling."  He discussed means of improving the swelling

with plaintiff, ordered further pain medication, and told plaintiff to follow up with him in

two weeks.  (*Id.*, Exh. A-13 at SUTTON 000257.)

Although it was almost three weeks before plaintiff saw Dr. Sutton again, plaintiff

did visit the clinic on July 2 and July 5.  On July 2, defendant, Kathryn Carpenter, a

registered nurse, noted that the "[s]kin on [his] fingers [was] very tight and puffy."

Plaintiff complained that "his fingers tingle much of the time" and that he was "[u]nable

to move [his] thumb and fingers without pain."  Nurse Carpenter rewrapped the

compressive bandage covering the lower part of plaintiff's arm and noted that he should

be "[s]chedule[d] to see a doctor soon."  (*Id.*, Exh. A-14 at SUTTON 000259.)

Defendant, Anna Jolly, a licensed practical nurse, again rewrapped plaintiff's bandage

on July 5, gave him a prescription for pain medication, and noted that he had an

appointment with the doctor "this week."  (*Id.*, Exh. A-15 at SUTTON 000260.)  Two

days later, plaintiff saw Dr. Sutton for the final time.  Plaintiff's hand and fingers were

noted to be "slightly swollen" and he was "[e]xtremely tender in moving the thumb."  Dr.

Sutton rewrapped the bandage more loosely at the base of the thumb, prescribed pain

medication, and ordered additional x-rays.  (*See* Plf. Resp. App., Exh. 5 at SUTTON

000026)

When HCCC's new full-time medical doctor, Dr. David Paz, first examined

plaintiff two weeks later, he noted that

> [e]xam after removing splint is deformed dorsum of right
> hand. . . . Pain in snuff box obvious.  Also pain right elbow.
> Need to rule out scaphoid fracture or dislocation of elbow
> and carpal bones.  Ortho consult important and needed!

(*Id.* at HEIDTKE 000027.) Dr. Paz ordered x-rays and a consultation with an orthopedist

"ASAP."  (*Id.*)  The x-rays revealed a "healing or healed fracture" where the "distal

fragment is angled dorsally approximately twelve degrees."  (*Id.* at HEIDTKE 000080.)

Plaintiff was noted to have also "elements of RSD [Reflex Sympathetic Dystrophy]."[4]

(*Id.* at 12 of 14.)  In October, 2009, after plaintiff was released from prison, he was

diagnosed with a malunion of the fracture and Complex Regional Pain Syndrome

---

[4] A chronic pain condition now known as Complex Regional Pain Syndrome (CRPS).  PubMed
Health, **Complex regional pain syndrome** (available at
http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0004456/) (last accessed April 7, 2011).

("CRPS").  Surgery was noted to be unadvisable at that time due to the CRPS, and nerve blocks were recommended.  (*Id.* at HEIDTKE 000190.)

Subsequently, plaintiff filed this lawsuit alleging claims under the Eighth Amendment for deliberate indifference to his medical needs.  He also brings Colorado state law negligence claims against Dr. Sutton and CCA and a claim of *respondeat superior* against CCA for the alleged negligence of their employees, Nurses Carpenter and Jolly.  Because I find that the federal constitutional claim does not withstand summary judgment, I decline to exercise supplemental jurisdiction over the state law negligence claims, and dismiss those without prejudice.

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishments." **U.S. CONST**. amend. VIII.  As applied to prisoners, the Eighth Amendment guarantees "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras*, 94 F .3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)).  Prison officials must "ensur[e] inmates receive the basic necessities of adequate food, clothing, shelter, and medical care[.]" *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998).  In particular, the Eighth Amendment right to adequate medical care is violated where prison officials are deliberately indifferent to a prisoner's serious medical needs.  *Helling v. McKinney*, 509 U.S. 25, 35, 113 S.Ct. 2475, 2481, 125 L.Ed.2d 22 (1993); *Estelle*, 97 S.Ct. at 291.

A viable Eighth Amendment claim in this context has both an objective and a subjective component, and plaintiff must present evidence sufficient to satisfy both in

order to proceed.  ***Callahan v. Poppell***, 471 F.3d 1155, 1159 (10th Cir. 2006).  First,

plaintiff must show that he was deprived of a medical need that is, objectively,

"sufficiently serious."  ***Farmer v. Brennan***, 511 U.S. 825, 834, 114 S.Ct. 1970 ,1977.

128 L.Ed.2d 811 (1994).  "A medical need is sufficiently serious if it is one that has been

diagnosed by a physician as mandating treatment or one that is so obvious that even a

lay person would easily recognize the necessity for a doctor's attention."  ***Ramos v.***

***Lamm***, 639 F.2d 559, 575 (10th Cir. 1980) (internal citation and quotation marks

omitted).  There can be no question here but that plaintiff's radial fracture was

sufficiently serious to meet the objective prong of the test.

In addition, however, plaintiff must demonstrate also that each defendant knew of

and disregarded an excessive risk to his health or safety.  ***Farmer***, 114 S.Ct. at 1979.

The subjective component implicates the defendant's state of mind and  is equivalent to

"criminal recklessness, which makes a person liable when she consciously disregards a

substantial risk of harm."  ***Beauclair v. Graves***, 227 Fed. Appx. 773, 776 (10th Cir.

2007) (quoting ***Mata v. Saiz***, 427 F.3d 745, 752 (10th Cir. 2005)).  Substantial harm

includes "lifelong handicap, permanent loss, or considerable pain."  ***Garett v. Stratman***,

254 F.3d 946, 950 (10th Cir. 2001).  Stated different, a plaintiff will satisfy this element

only where he shows that the defendant both was "aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and . . . also

dr[e]w the inference."  ***Farmer***, 114 S.Ct. at 1979.

Thus, "it is obduracy and wantonness, not inadvertence or error in good faith,

that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause."

***Whitley v. Albers***, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986).

Mere negligence, even negligence that constitutes medical malpractice, is insufficient to

state a claim.  ***Estelle***, 97 S.Ct. at 292; ***see also Duffield v. Jackson***, 545 F.3d 1234,

1238 (10th Cir. 2008); ***Perkins v. Kansas Department of Corrections***, 165 F.3d 803,

811 (10th Cir. 1999).  Moreover, because a prison doctor remains free to exercise his

independent professional judgment, "[m]edical decisions that may be characterized as

classic examples of matters for medical judgment . . . are beyond the [Eighth]

Amendment's purview," ***Callahan v. Poppell***, 471 F.3d 1155, 1160 (10th Cir. 2006)

(citations and internal quotation marks omitted).  ***See also Worrell v. Bruce***, 296 Fed.

Appx. 665, 670 (10th  Cir. 2008) (same for nursing decision of prison nurse).  Therefore,

"a mere difference of opinion between the prison's medical staff and the inmate as to

the diagnosis or treatment which the inmate receives does not support a claim of cruel

and unusual punishment." ***Ramos,*** 639 F.2d at 575.  Similarly, a prisoner does not

have a valid claim of deliberate indifference simply because he was denied a particular

course of treatment.  ***Callahan v. Poppell***, 471 F.3d 1155, 1160 (10th Cir. 2006).

Nothing in the record before me supports an inference of this type of culpable

subjective mental state on the part of Dr. Sutton or Nurses, Carpenter or Jolly.[5]  Plaintiff

was seen eight times in a period of approximately one month for complaints related to

his arm fracture.  He saw Dr. Sutton two days after the injury, again thirteen days later,

and finally twenty days after that.  At each visit, plaintiff's complaints of pain, numbness,

---

[5]  Although CCA maintains also that plaintiff failed to exhaust his administrative remedies as to this claim, the evidence on that issue is confusing at best.  Because plaintiff clearly has not presented sufficient evidence to withstand summary judgment on his substantive deliberate indifference claim, however, I pretermit consideration of the exhaustion question.

and swelling in the hands and fingers were noted and addressed, albeit arguably not in a manner as thorough and comprehensive as might have been preferred. When his symptoms were found to be worse at his June 17 appointment, Dr. Sutton ordered X-rays, which he found to reveal a stable fracture.[6] In the interim, plaintiff was seen by the nursing staff for refills of his medications and rewrapping of his compression bandages.

All of plaintiff's various complaints about the care he received from Dr. Sutton – whether he fully appreciated the seriousness of plaintiff's fracture and the potential for the development of CRPS; whether the arm should have been casted and who was qualified to make that determination; whether the swelling and other symptoms plaintiff experienced were consistent with his injury or suggested a more serious complication; the scheduling and timeliness of follow up appointments; the failure to order a lower bunk restriction – at best suggest nothing more than the erroneous exercise of medical judgment regarding the seriousness of plaintiff's condition. This is not a case where the necessity for a different or more aggressive course of medical treatment was so obvious that a lay person could have perceived it. *Cf. Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). In the absence of such patently obvious injurious circumstances, "the medical judgment of the physician, even if grossly negligent, is not subject to second-guessing in the guise of an Eighth Amendment claim." *Id.* Such is the case here.

Plaintiff complains, however, that Dr. Sutton and Nurses, Carpenter and Jolly,

---

[6] Plaintiff's expert disputes this reading of the x-rays, saying they show extension of the fracture into the joint space, a complicating factor indicating a potentially unstable fracture. This difference in medical opinion as to the import of the x-rays, which might support a cause of action for medical malpractice, does not advance plaintiff's Eighth Amendment claim, however. Nor does plaintiff point to any evidence to support his suggestion that Dr. Sutton, an orthopedist himself, merely relied on the radiologist's interpretation of the films. Even if he had, such fact again would suggest no more than negligence, not deliberate indifference.

failed in their duties as "gatekeepers," the latter by not contacting Dr. Sutton directly to report plaintiff's worsening symptoms and the former by failing to refer plaintiff to a specialist or otherwise for further consultation outside the prison.  *See Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000) (medical professional who "knows that his role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition," but through deliberate indifference delays or refuses to fulfill that role, may be liable for deliberate indifference for denial of access to medical care).  Yet nothing in the record before me indicates that Dr. Sutton or Nurses Carpenter and Jolly served "solely" as a gatekeeper to further, more specialized care that was obviously required at the time of these events.  Although they certainly could have determined that plaintiff's condition required further evaluation beyond their skills, they did not perceive his injury to be serious enough to warrant such referral, and nothing in the evidence suggests that they were deliberately indifferent in that perception.

For these reasons, Dr. Sutton, Nurse Carpenter, and Nurse Jolly are entitled to summary judgment as to plaintiff's Eighth Amendment claims against them.  Moreover, because no underlying constitutional violation was committed by any of its employees, CCA cannot be liable under section 1983 for allegedly maintaining a constitutionally deficient policy or custom.  *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 1573. 89 L.Ed.2d 806 (1986) (per curiam)).  *See also Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (recognizing that principles of municipal liability developed in

*Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98

S.Ct. 2018, 56 L.Ed.2d 611 (1978), apply to private entities acting under color of state

law).

These determinations eliminate the only basis for federal jurisdiction pleaded in

this case. When all federal claims have been dismissed prior to trial, the court generally

should decline to exercise supplemental jurisdiction over pendant state law claims.

*United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002). I find it appropriate to

do so here, and, thus, will dismiss plaintiff's remaining state law claims for negligence

without prejudice.

**THEREFORE, IT IS ORDERED** as follows:

1. That **Motion for Summary Judgment from the CCA Defendants** [#80] filed

February 7, 2011, is **GRANTED IN PART** and **DENIED IN PART**, as follows:

a. That the motion is **GRANTED** insofar as it seeks summary judgment

regarding plaintiff's federal constitutional claims asserted under the Eighth Amendment

for deliberate indifference to serious medical needs; and

b. That in all other respects, the motion is **DENIED WITHOUT PREJUDICE**;

2. That the **Motion for Partial Summary Judgment Pursuant to Fed.R.Civ.P.**

**56(a)** [#81], filed February 7, 2011, by defendant, Jere G. Sutton, M.D., is **GRANTED**;

3. That plaintiff's federal constitutional claims implicating the Eighth Amendment

as asserted in the **Final Pretrial Order** ¶¶ 3.a.1 at 3-5, 3.a.3 at 6, 3.a.4 at 6, & 3.a.5 at

6-7 [#90], filed March 7, 2011, are **DISMISSED WITH PREJUDICE**;

4. That the court **DECLINES** to exercise supplemental jurisdiction over the

Colorado state common law negligence claims and the claim against CCA for

*respondeat superior* liability based on the alleged common law negligence of its

employees as asserted in the **Final Pretrial Order** ¶¶ 3.a.2 at 5-6, 3.a.6 at 7, & 3.a.7 at

8 [#90], filed March 7, 2011, and those claims accordingly are **DISMISSED WITHOUT**

**PREJUDICE**;

     5.  That judgment **SHALL ENTER** on behalf of defendants, Corrections

Corporation of American, Jere G. Sutton, in his Individual and Official Capacity, Kathryn

Ann Carpenter, R.N. [identified as "K. Carpenter, R.N." in the caption], in her Individual

and Official Capacity, and Anna Jolly, L.P.N. [misidentified as "Anna Jolly, R.N." in the

caption], in her Individual and Official Capacity, against plaintiff, David Wayne Heidtke,

as to the federal constitutional claims implicating the Eighth Amendment asserted in the

**Final Pretrial Order** ¶¶ 3.a.1 at 3-5, 3.a.3 at 6, 3.a.4 at 6, & 3.a.5 at 6-7 [#90], filed

March 7, 2011; provided, however, that the judgment as to these claims **SHALL BE**

**WITH PREJUDICE**;

     6.  That judgment **SHALL ENTER** on behalf of defendants, Corrections

Corporation of American, Jere G. Sutton, in his Individual and Official Capacity, Kathryn

Ann Carpenter, R.N. [identified as "K. Carpenter, R.N." in the caption], in her Individual

and Official Capacity, and Anna Jolly, L.P.N. [misidentified as "Anna Jolly, R.N." in the

caption], in her Individual and Official Capacity, against plaintiff, David Wayne Heidtke,

as to the Colorado state common law negligence claims and the claim against CCA for

*respondeat superior* liability based on the alleged common law negligence of its

employees asserted in the **Final Pretrial Order** ¶¶ 3.a.2 at 5-6, 3.a.6 at 7, & 3.a.7 at 8

[#90], filed March 7, 2011; provided, however, that the judgment as to these claims

**SHALL BE WITHOUT PREJUDICE**;

      7. That the Trial Preparation Conference, currently scheduled for Friday, April 8,

2011 at 1:30 p.m., as well as the trial, currently scheduled to commence on Monday,

April 25, 2011, are **VACATED**; and

      8. That defendants are **AWARDED** their costs, to be taxed by the Clerk of the

Court pursuant to Fed.R.Civ.P. 54(d)(1) and D.C.COLO.LCivR 54.1.

      Dated April 7, 2011, at Denver, Colorado.

                                                  **BY THE COURT:**

                                                  *Bob Blackburn*

                                                  Robert E. Blackburn
                                                  United States District Judge